

|  |  |
|---|---|
| | **U.S. Department of Justice** |
| | Civil Division |
| FEW:SCTosini | Telephone: (202) 616-5196 |
| DJ No. 54-15-0124 | stephen.tosini@usdoj.gov |

*Washington, DC 20530*

April 2, 2025

Jarrett B. Perlow
Clerk of the Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

     Re:    *China Manufacturers Alliance, LLC v. US*, 2023-2391

Dear Mr. Perlow:

     Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, we respectfully submit supplemental authority. We direct the Court's attention to *Pirelli Tyre Co. v. United States*, 128 F.4th 1265 (Fed. Cir. 2025).

     In *Pirelli*, this Court concluded that, under the Department of Commerce's nonmarket economy methodology, to find that a respondent has failed to demonstrate a lack of government control, the agency (1) need not identify a "link between the selection of management and influence over export activities," *id*. at 1270; (2) despite the "rebuttable presumption" of state control, the respondent must still meet its "burden of persuasion" under the "substantial evidence" standard, *id*.; and (2) substantial evidence supported Commerce's conclusion that the respondent had not demonstrated "autonomy from government control over the selection of management." *Id*. at 1271.

     *Pirelli* supports the Government's position at pages 33-37 of our brief, that the Government need not demonstrate a link between the selection of management and the company's export activities. Similarly, *Pirelli* supports out position at pages 22-27 of our brief that respondents must meet the burden or persuasion to establish independence regardless of any evidentiary presumption. Lastly, the substantial evidence supporting Commerce's determination in *Pirelli* is of a similar nature to that supporting Commerce's decision in this case. *See* Appx3014-Appx3017.

                                    Very truly yours,
                                      /s/ *Stephen C. Tosini*
                                    STEPHEN C. TOSINI
                                      Senior Trial Counsel
                               Commercial Litigation Branch

128 F.4th 1265
United States Court of Appeals, Federal Circuit.

PIRELLI TYRE CO., LTD., Pirelli Tyre S.p.A., Pirelli Tire LLC, Plaintiffs-Appellants Shandong New Continent Tire Co., Ltd., Plaintiff

v.

UNITED STATES, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, Defendants-Appellees

2023-2266
|
Decided: February 11, 2025

**Synopsis**
**Background:** Exporter and importer filed suit challenging Department of Commerce's results in administrative review of antidumping-duty order for passenger-vehicle and light-truck tires from People's Republic of China. The Court of International Trade, Jennifer Choe-Groves, J., 539 F.Supp.3d 1257, remanded to Commerce. On remand, Commerce assigned exporter country-wide antidumping-duty rate. The Court of International Trade, Choe-Groves, J., 638 F.Supp.3d 1361, upheld Commerce's determination. Exporter appealed.

**Holdings:** The Court of Appeals, Taranto, Circuit Judge, held that:

[1] Commerce was not required to establish on record link between exporter's selection of management and influence over export activities when assigning country-wide rate;

[2] Commerce's rejection of exporter's arguments based on Italian law was reasonable; and

[3] substantial evidence supported Commerce's finding that exporter failed to show absence of de facto government control over selection of management.

Affirmed.

**Procedural Posture(s):** On Appeal; Review of Administrative Decision.

West Headnotes (9)

[1] **Customs Duties** ⟶ Mode of review

Court of Appeals reviews decisions of the Court of International Trade in an antidumping proceeding by applying anew the same standard used by the Court of International Trade.

[2] **Customs Duties** ⟶ Questions of fact, findings, and decision

"Substantial evidence," as required for the Court of Appeals to uphold an antidumping determination by the Department of Commerce, means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Tariff Act of 1930 § 516A, 19 U.S.C.A. § 1516a(b)(1)(B)(i).

[3] **Customs Duties** ⟶ Countervailing or Dumping Duties

Department of Commerce was not required to establish on record in administrative review of antidumping-duty order for passenger-vehicle and light-truck tires from People's Republic of China link between exporter's selection of management and influence over export activities when assigning exporter country-wide antidumping-duty rate; selection of management, as factor for showing absence of de facto government control necessary for separate rate, was not restricted to export prices or export sales, but instead entailed control of all significant management decisions. Tariff Act of 1930 §§ 735, 771, 19 U.S.C.A. §§ 1673d(c)(1)(B)(i), 1677(18)(A); 19 C.F.R. § 351.107(d).

[4] **Customs Duties** ⟶ Proceedings

A respondent in an antidumping-duty proceeding involving a nonmarket economy carries a burden of persuasion to justify a separate antidumping

duty rate. Tariff Act of 1930 §§ 735, 771, 19 U.S.C.A. §§ 1673d(c)(1)(B)(i), 1677(18)(A); 19 C.F.R. § 351.107(d).

[5] **Customs Duties** Proceedings

Department of Commerce's rejection of exporter's arguments based on Italian law as evidence that board of directors of Italian holding company, which was indirect majority shareholder of exporter and indirectly controlled by enterprises owned by Chinese government, was independent from such enterprises was reasonable in administrative review of antidumping-duty order for passenger-vehicle and light-truck tires from People's Republic of China, when finding that exporter failed to show absence of de facto government control over selection of management and assigning exporter country-wide antidumping-duty rate, where record did not contain provisions of Italian law relied on by exporter, English translations of them, or expert analyses of relevant Italian law. Tariff Act of 1930 §§ 735, 771, 19 U.S.C.A. §§ 1673d(c)(1)(B)(i), 1677(18)(A); 19 C.F.R. § 351.107(d).

[6] **Customs Duties** Proceedings

The Department of Commerce has discretion in the manner in which it conducts its administrative antidumping proceedings.

[7] **Customs Duties** Proceedings

The respondent in an administrative antidumping proceeding bears the burden of creating the record for the Department of Commerce's review.

[8] **Customs Duties** Countervailing or Dumping Duties

Substantial evidence supported Department of Commerce's finding in administrative review of antidumping-duty order for passenger-vehicle and light-truck tires from People's Republic of China that exporter failed to show absence of de facto government control over selection of management, when assigning exporter country-wide antidumping-duty rate; Italian holding company was indirect majority shareholder of exporter and selected most of exporter's board members, enterprise owned by Chinese government was single largest indirect shareholder of holding company, entities affiliated with exporter shared common board membership and management, including member who was chairman of enterprise, and exporter's annual report stated that holding company was indirectly controlled by enterprise. Tariff Act of 1930 §§ 516A, 735, 771, 19 U.S.C.A. §§ 1516a(b)(1)(B)(i), 1673d(c)(1)(B)(i), 1677(18)(A); 19 C.F.R. § 351.107(d).

[9] **Customs Duties** Proceedings

The substantial-evidence standard requires the Department of Commerce to consider all evidence on the record in an antidumping proceeding, but such consideration does not necessitate explicit mention and discussion of each piece of evidence. Tariff Act of 1930 § 516A, 19 U.S.C.A. § 1516a(b)(1)(B)(i).

**\*1266** Appeal from the United States Court of International Trade in No. 1:20-cv-00115-JCG, Judge Jennifer Choe-Groves.

**Attorneys and Law Firms**

Daniel L. Porter, Curtis, Mallet-Prevost, Colt & Mosle LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by James P. Durling; Ana Maria Amador Gil, New York, NY.

Sosun Bae, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by Brian M. Boynton, Patricia M. McCarthy; Ayat Mujais, Office of the Chief Counsel for Trade Enforcement and

Compliance, United States Department of Commerce, Washington, DC.

Nicholas J. Birch, Schagrin Associates, Washington, DC, argued for defendant-appellee United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC. Also represented by Christopher Cloutier, Elizabeth Drake, William Alfred Fennell, Jeffrey David Gerrish, Luke A. Meisner, Roger Brian Schagrin.

Before Prost, Taranto, and Chen, Circuit Judges.

**Opinion**

Taranto, Circuit Judge.

**\*1267** Based on the United States Department of Commerce's 2015 antidumping-duty order covering certain passenger-vehicle and light-truck tires from the People's Republic of China (PRC), Commerce conducted an administrative review under section 751 of the Tariff Act of 1930, 19 U.S.C. § 1675, of merchandise that was covered by the 2015 order and entered into the United States between August 1, 2017, and July 31, 2018 (the 2017–2018 administrative review). In that review, Commerce followed its practice, approved by this court since *Sigma Corp. v. United States*, 117 F.3d 1401, 1405–07 (Fed. Cir. 1997), of applying a rebuttable presumption that all exporters within the "non-market economy" of the PRC are subject to the PRC government's control and hence assigning such an exporter a PRC-wide antidumping-duty rate unless the exporter demonstrates independence from government control sufficient to entitle it to a separate rate. *See* 19 U.S.C. § 1677(18). Pirelli Tyre Co., Ltd. (Pirelli China), a foreign producer and exporter of certain tires covered by the 2015 order, sought to establish such independence, but Commerce determined that it had not done so. The United States Court of International Trade (Trade Court) upheld Commerce's determination as in accordance with the law and supported by substantial evidence. We now affirm.

I

In 2015, Commerce issued an antidumping-duty order for certain passenger-vehicle and light-truck tires from the PRC. *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 47902 (Aug. 10, 2015). Upon request from Pirelli China and its affiliated U.S. importer, Pirelli Tire LLC (Pirelli USA), Commerce initiated the 2017–2018 administrative review to determine rates for the identified period. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 50077 (Oct. 4, 2018) (*Initiation Notice*). We do not repeat the recitation of the procedural history set forth by the Trade Court in upholding the ultimate results of the review (as relevant here). *Pirelli Tyre Co., v. United States*, 627 F. Supp. 3d 1322, 1326–28 (Ct. Int'l Trade 2023) (*First Opinion*), superseded by *Pirelli Tyre Co., v. United States*, 638 F. Supp. 3d 1361, 1364–67 (Ct. Int'l Trade 2023) (*Amended Opinion*).

**\*1268** Commerce may assign a "single dumping margin applicable to all exporters and producers" within the PRC because, as is accepted here, the PRC is a "nonmarket economy" (NME) country. 19 C.F.R. § 351.107(d); *see* 19 U.S.C. §§ 1677(18)(A) (defining an NME country as one whose economy that does "not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise"), 1673d(c)(1)(B)(i); *China Manufacturers Alliance, LLC v. United States*, 1 F.4th 1028, 1036–37 (Fed. Cir. 2021); *Michaels Stores, Inc. v. United States*, 766 F.3d 1388, 1390 (Fed. Cir. 2014); *Sigma*, 117 F.3d at 1405–06. In the current proceeding, Commerce followed its longstanding, judicially approved practice of presuming "that all companies within the [PRC] are subject to government control and, thus, should be assigned a single antidumping duty deposit rate," and requiring Pirelli China, in order to justify a separate rate for itself, to "demonstrate the absence of both *de jure* and *de facto* government control over [its] export activities." *Initiation Notice*, 83 Fed. Reg. at 50078; *see, e.g.*, *Michaels Stores, Inc.*, 766 F.3d at 1390, 1392. Attempting such a showing, as Commerce instructed, *id.*, required providing, in a separate-rate application, information relevant under a test set forth in a 2005 policy bulletin—which the parties here accept as controlling. *Policy Bulletin 05.1*, *Separate-Rates Practice and Application of Combination Rates in Antidumping Investigations involving Non-Market Economy Countries* 1–7 (Dep't of Commerce Apr. 5, 2005), available at https://enforcement.trade.gov/policy/bull05-1.pdf (*Separate Rate Policy Bulletin*).[1] At

issue here is whether Pirelli China met the third criterion of the de-facto-control test— having "autonomy from the central, provincial and local governments in making decisions regarding the selection of its management," *Separate Rate Policy Bulletin*, at 2; *see Amended Opinion*, at 1366, 1372–73; Pirelli Opening Br. at 22, 24–25, 38.

Pirelli China (along with Pirelli USA) filed a separate-rate application. J.A. 201–42; *see also* J.A. 557–1461 (exhibits attached to application). The application disclosed an "indirect relationship" between Pirelli China and the Central State-owned Assets Supervision and Administration Commission of the State Council (SASAC): Two state-owned enterprises supervised by SASAC—the Silk Road Fund and China National Chemical Corporation (referred to in the proceedings as Chem China, ChemChina, or China Chem) —"had indirect ownership interests in Pirelli & C. S.p.A. [(Pirelli Italy)]," which was "the Italian holding company of the Pirelli Group" and "indirect controlling shareholder of [Pirelli China]."[2] J.A. 220. The application referred to Italian law in passing, but it did not include copies of relevant Italian laws or English translations (or expert analysis). J.A. 226 & n.11, 227–29.

Commerce issued its preliminary results on October 18, 2019, rejecting the **\*1269** separate-rate request because Pirelli China had not demonstrated an absence of de facto control by the PRC's government. *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Rescission, in Part; 2017–2018*, 84 Fed. Reg. 55909, 55912 (Oct. 18, 2019). Pirelli China then submitted a case brief arguing that the preliminary determination was "legally and factually wrong" and pointing to Italian law as evidence that Pirelli Italy's board of directors, Pirelli Italy, and Pirelli China are independent from SASAC entities. J.A. 1615, 1642–46, 1657–60. In April 2020, Commerce issued its final results, in which it "continue[d] to find" that Pirelli China had not demonstrated its entitlement to a separate rate. *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017–2018*, 85 Fed. Reg. 22396, 22397 (Apr. 22, 2020). Commerce found that Pirelli China "ha[d] not demonstrated on this record that Chem China no longer retains actual or potential control and influence throughout the Pirelli companies' ownership structure (*i.e.*, Pirelli [Italy] and Pirelli China) and management, including Pirelli China's board and management," specifically identifying the failure to demonstrate "autonomy from government control over the selection of management." *Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China and Rescission, in part; 2017 2018* at 14, 17–18 (Dep't of Commerce Apr. 15, 2020) (*Final Decision Memo*). Commerce rejected Pirelli China's Italian-law arguments as unsupported by the record, which did not include the relevant provisions of Italian law. *Id.* at 15–17.

On May 21, 2020, Pirelli China, Pirelli USA, and Pirelli Tyre S.p.A. (another entity in the corporate chain between Pirelli Italy and Pirelli China[3]) (collectively, Pirelli) challenged Commerce's decision in the Trade Court. *See* 19 U.S.C. §§ 1516a(a), (d), 1677(9); 28 U.S.C. § 2631(c). After a remand for reasons not important on appeal now, the Trade Court held that Commerce's assignment of the PRC-wide rate to Pirelli China was in accordance with the law and supported by substantial evidence. *First Opinion*, at 1342. The Trade Court did not address Pirelli's arguments premised on Italian law, holding that "Commerce's rejection of Pirelli's unsupported interpretations of Italian law was reasonable." *Id.* at 1339. Pirelli moved to amend or alter the judgment, asking the Trade Court to address its Italian-law arguments. The Trade Court did so in its *Amended Opinion*, concluding that "[e]ven if Italian law had been on the record before Commerce, it would not have rebutted the presumption of de facto government control." *Amended Opinion*, at 1380; *see id.* at 1380–83.

Pirelli timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

II

**[1] [2]** We review decisions of the Trade Court by "apply[ing] anew the same standard used" by the Trade Court. *Ad Hoc Shrimp Trade Action Committee v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (alteration in original) (quoting *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380 (Fed. Cir. 2008)). We **\*1270** uphold Commerce's determination here unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see*

*also* *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *China Manufacturers Alliance, LLC*, 1 F.4th at 1035 (quoting *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

### A

Pirelli argues that Commerce's analysis of whether Pirelli China was entitled to a separate rate contained two "legal flaw[s]"—first, not explicitly linking the selection of management to "export functions," and second, adopting and applying an unlawful interpretation of "rebuttable presumption." Pirelli Opening Br. at 20–37. We disagree.

 **[3]** Pirelli argues that the test articulated in the *Separate Rate Policy Bulletin* requires Commerce to establish on the record a link between the selection of management and influence over export activities. *Id.* at 21–31. But, as the Trade Court held, Pirelli's view is counter to the text of the accepted *Separate Rate Policy Bulletin*: The third factor for de facto control, addressing "selection of its management," omits the restrictions to "export prices" or "export sales" that appear in the first and fourth factors. *Amended Opinion*, at 1377. And there is no persuasive reason to read such restrictions into this factor, contrary to the facially plain reading: Control of selecting management may reasonably be thought to entail control of all significant management decisions such as the ones at issue here. We conclude that Commerce properly gave this factor its plain meaning as part of the multi-factor test, with the ultimate finding subject to substantial-evidence review that requires bottom-line reasonableness.

 **[4]** Pirelli also argues that Commerce employed a "legally flawed" approach by treating the rebuttable presumption as a "new standard of evidence" where the respondent must "prove that the presumption is affirmatively wrong to win separate rate eligibility." Pirelli Opening Br. at 31–32. We understand Pirelli to be arguing that overcoming the rebuttable presumption here is distinct from having to carry a burden of persuasion and that the latter is not required. *See id.* at 31–37. It is enough to say that, whatever variations in usage there may be in law generally, it is clear in this context that Commerce requires the respondent in present circumstances to carry a burden of persuasion to justify a separate rate, and we have upheld that practice. *E.g.*, *Zhejiang Machinery Import & Export Corp. v. United States*, 65 F.4th 1364, 1366 (Fed. Cir. 2023) (explaining that Commerce can decline a separate-rate application "[i]f the exporter fails to meet its burden in demonstrating the absence of government control" and listing evidence that the exporter may provide to meet its burden); *Diamond Sawblades Manufacturers Coalition v. United States,* 866 F.3d 1304, 1311 (Fed. Cir. 2017) (collecting cases); *Sigma*, 117 F.3d at 1405–06 (explaining that a respondent in an NME country "must 'affirmatively demonstrate' its entitlement to a separate, company-specific margin" (citation omitted)); *Dongtai Peak Honey Industry Co., v. United States,* 777 F.3d 1343, 1350, 1354 (Fed. Cir. 2015). Because Commerce found that Pirelli did not carry that burden, it does not matter whether the burden of persuasion is part of, or additional to, the presumption.

### *1271 B

Pirelli contends that Commerce's finding that Pirelli failed to show the absence of de facto government control is not supported by substantial evidence, arguing that Commerce "did not seriously address" all evidence "and instead simply relied heavily on the presumption of state control." Pirelli Opening Br. at 38–65. We disagree.

 **[5]**  **[6]**  **[7]** First, Pirelli's argument depends in large part on its assertions about Italian law. *See* Pirelli Opening Br. at 18, 39, 45–51, 60–64. But Commerce did not act improperly in declining to consider those arguments given that the record did not contain the relied-on provisions of Italian law, English translations of them, or expert analyses of relevant Italian law. At least where all three were missing, we agree with the Trade Court that Commerce's rejection of the Italian-law arguments was reasonable given that Commerce has "discretion in the manner in which it conducts its administrative proceedings" and that "[t]he respondent bears the burden of creating the record for Commerce's review." *First Opinion*, at 1339; *Amended Opinion*, at 1378. We note that the separate-rate application did not even include full citations to specific provisions of Italian law that Pirelli now argues should have been considered, *see*, *e.g.*, J.A. 228–29; Pirelli Opening Br. at 62–63, and that Pirelli should have been aware of the importance of providing such documentation on the record given that the separate-rate application had instructions to

include English translations of relevant documents and laws, *see, e.g.*, J.A. 217–18.

[8] [9] Second, substantial evidence supports Commerce's determination. The substantial-evidence standard requires Commerce to consider all evidence on the record, but such consideration does not necessitate explicit mention and discussion of each piece of evidence. *See Charles G. Williams Construction, Inc. v. White*, 326 F.3d 1376, 1380 (Fed. Cir. 2003) (citation omitted); *cf.* *Novartis AG v. Torrent Pharmaceuticals Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017) (citations omitted). In explaining why it found that Pirelli had not shown "its autonomy from government control over the selection of management," Commerce recited at least the following: (1) Pirelli Italy "is the indirect majority shareholder of Pirelli China" and "selects most of [Pirelli China's] board members"; (2) "Pirelli entities share common board membership and management," including Mr. Ren Jianxin, who is the "Chairman and President of SASAC-owned China Chem and the Chairman of the Board of Pirelli [Italy]"; (3) "China Chem is the single largest indirect shareholder in Pirelli [Italy]"; (4) Pirelli's 2017 Annual Report stated that Pirelli Italy is "indirectly controlled ... by ChemChina via [China National Tire & Rubber Corporation, Ltd.] and certain of its subsidiaries" and Commerce, with the relevant Italian-law provisions missing from the record, was "not convinced that Pirelli [Italy] must report that it is controlled by Chem China mainly for accounting purposes pursuant to the Italian Finance Code"; (5) an SASAC entity "appointed the majority of Pirelli [Italy's] board" and Commerce, lacking the relevant Italian-law provisions, was "not convinced that those members are free from control from China Chem"; and (6) the record did not support a conclusion that Pirelli Italy's CEO "has exclusive authority to select Pirelli [Italy's] management, thereby preventing board members from influencing the company's day-to-day operations." *Final Decision Memo,* at 14–17 (citations omitted). In light of the limited evidence Pirelli properly placed on the record, and Pirelli's arguments here, we see no basis for doubt that Commerce made a reasonable factual determination **\*1272** on the entirety of the evidence. *Amended Opinion*, at 1378–80.

III

For the foregoing reasons, we affirm the Trade Court's decision.

**AFFIRMED**

**All Citations**

128 F.4th 1265

---

**Footnotes**

1. After briefing was complete in this court, Commerce added 19 C.F.R. § 351.108 to its regulations, codifying a version of the separate-rate test that included two more de facto criteria. *Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws*, 89 Fed. Reg. 101694, 101699–705, 101758–60 (Dec. 16, 2024).

2. China Chem's indirect control ran through its wholly owned subsidiary, China National Tire & Rubber Corporation, Ltd. (CNRC). *See Amended Opinion*, at 1379; Pirelli Opening Br. at 14.

3. Pirelli Tyre S.p.A. is 100% owned by Pirelli Italy and is the indirect owner of Pirelli China. *Final Decision Memo*, at 15; Government Response Br. at 8.

---